UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DANIEL MEADE                                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:10-CV-P601-H

DANNY FACKLER et al.                                                                              DEFENDANTS

## MEMORANDUM OPINION and ORDER

Plaintiff, Daniel Meade, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 (DN 1). This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff is currently incarcerated at the Bullitt County Detention Center (BCDC). He sues the following employees of BCDC: Jailer Danny Fackler; Deputy Jailer Martha Knox; and Donna Bullock, medical team administrator. He also sues Dr. Robert Adams, a staff psychiatrist at the Kentucky Correctional Psychiatric Center. Plaintiff alleges that while he was being evaluated on March 31, 2010, by Dr. Adams, Dr. Adams concluded that he suffered from dysthymic disorder and an antisocial personality disorder and prescribed 20 mg of the antidepressant Celexa and 1 mg of the antipsychotic Risperdal daily. Plaintiff states that a week later Dr. Adams raised his dosage of Risperdal to 2 mg. Plaintiff states that around May 1, 2010, he began to experience severe side effects – swelling of his throat and body joints, constant agitation, and suicidal thoughts – from the Risperdal after being transferred back to BCDC. Plaintiff states that he asked to be re-evaluated by Dr. Adams or to speak with someone from "mental health" at BCDC, but his request was not granted and he took himself off of the Risperdal. He further

alleges that he has not received any follow-up with Dr. Adams and has had to deal with extreme mental anguish including thoughts of suicide, hallucinations, delusions of people trying to hurt him, despair, and agitation over sudden noises.

Plaintiff also complains regarding the temperature in his cell. He states that the air conditioning unit in his section is controlled by several thermostats, and the one controlling his dorm also controls a long hallway and two other dorms. He further states that because of the distance of his cell from the thermostat it is not possible to maintain the "D.O.C. Guidelines for a 'comfort zone'" between 68 and 80 degrees. Plaintiff alleges that it is usually 60 degrees where he resides and that when he asks for it to be made warmer, he is told that the other dorms are very hot. He also alleges that some officers will even make it cooler so that they will be cool while they work, or as a disciplinary response, saying "if you're cold, you'll stay in bed and out of trouble." As relief, Plaintiff wants monetary and injunctive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982)

(per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff does not indicate in which capacity he sues Defendants. Because Plaintiff references them in the context of their official positions, the claims will be construed as brought against Defendants in their official capacity. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) (where § 1983 plaintiff fails to affirmatively plead capacity in the complaint, the Court looks to the course of proceedings to determine whether the Sixth Circuit's concern about notice to the defendant has been satisfied).

*Claim against Dr. Adams*

Plaintiff alleges that Defendant Adams has violated his constitutional rights by not providing follow-up of his medical care. According to the complaint, Defendant Adams is employed at the Kentucky Correctional Psychiatric Center, a state agency. Because he sues Defendant Adams in his official capacity, the claims brought against him are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* § 1983. States, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims for money damages from Defendant Adams in his official capacity fail to allege cognizable claims under § 1983. Moreover, Defendant Adams is immune from monetary damages under the Eleventh Amendment. *See id.* The Court will dismiss the claims for monetary relief against Defendant Adams pursuant to §§ 1915A(b)(1) and

(b)(2).[1]

*Claim against Donna Bullock*

Plaintiff states that Defendant Bullock is in charge of "Medical" at BCDC. He alleges that he spoke with her personally about his situation and she said that he would not be able to see a doctor but that she would take care of it. He also states that shortly thereafter he was taken off of his Risperdal and moved from solitary confinement.[2] He states that he does not understand why Defendant Bullock just took him off of his medication and that he does not believe that she is qualified to do so. He alleges that due to the lack of medication he has to "battle mentally every day with thoughts of suicide and voices of violence and paranoia."

As already noted, if an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will*, 491 U.S. at 71. Therefore, in the case at bar, Plaintiff's claims against the employees of BCDC in their official capacities are actually brought against the Bullitt County government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Bullitt County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City*

---

[1] In *Will*, the Supreme Court noted that officials still may be sued for injunctive relief under § 1983 because "'official capacity' actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10. However, Plaintiff's request for injunctive relief as to Defendant Adams is moot because he is no longer incarcerated at the KCPC. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

[2] The Court notes that earlier in the complaint he stated that after his request to see someone from "mental health" was not granted, "[he] had to discontinue taking the risperdal on my own."

4

of Harker Heights, Tex., 503 U.S. 115, 120 (1992).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Village of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Plaintiff has not alleged that Defendant Bullock has violated his constitutional rights

because of a BCDC policy or custom. Consequently, his claim against Defendant Bullock in her official capacity must be dismissed.

*Claim against Jailer Fackler*

Plaintiff alleges that Defendant Fackler has failed to fix the air conditioning which Plaintiff contends is colder in his cell than the prescribed comfort zone. According to Plaintiff's complaint the temperature in his cell is usually around 60 degrees.

Here, Plaintiff's allegation that his cell temperature is usually around 60 degrees is insufficient to allege a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. A sufficiently serious deprivation might be found where an inmate is subjected to a low cell temperature at night, not provided blankets, and deprived of his basic need for warmth. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). However, "constitutionally adequate housing is not denied simply by uncomfortable temperatures inside cells, unless it is shown that the situation endangers an inmates' health." *Grubbs v. Bradley*, 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982).

This is not a situation in which Plaintiff alleges that prison officials exposed him to temperatures that were close to freezing and failed to provide him adequate clothing and blankets. *See Franklin v. Franklin*, No. 97-4365, 2000 WL 687434, at *4 (6th Cir. May 16, 2000) (holding that allegations that prison officials exposed prisoner to temperatures that were close to freezing and failed to provide him adequate clothing and blankets alleged a constitutional violation); *see also Berryman v. Johnson*, Nos. 88-1239, 88-1280, 1991 WL 150808, at *12 (6th Cir. Aug. 6, 1991) ("[W]e reject the notion that healthy men of these ages, both of whom admittedly had blankets, could not be expected to withstand periodic exposure to

temperatures in the fifties."). The Court notes that Plaintiff does not claim that he was deprived of sufficient clothing or blankets to remain warm and that it does not appear that Plaintiff has any basis for his assertion regarding cell temperature other than the fact that he felt cold. *See Payette v. Trierweiler*, No. 2:10-cv-8, 2010 WL 3937158, at *7 (W.D. Mich. Oct. 4, 2010) (concluding that prisoner's claim regarding cold cell temperature did not state a constitutional violation where prisoner did not allege that he was deprived of clothing to stay warm and had no basis for his assertion as to the cell temperature except that he felt cold). In short, Plaintiff has failed to state a claim with regard to the allegedly cold temperatures in his cell.

***Claims against Deputy Jailer Knox***

Plaintiff claims relating to Defendant Knox are that he filed a grievance and requested a copy of that grievance and a review of the situation prompting the grievance, *i.e.*, that his sick-call request was never addressed, but his grievance "fell on deaf ears and no copy was returned to [him]." He also states that he brought to Defendant Knox's attention the uncomfortable coolness in his cell by grievance and by verbal request, and that subjecting him to the "extreme cold temperature" is cruel and unusual punishment.

An inmate grievance procedure within the prison system is not constitutionally required. *See United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 163 (S.D.N.Y. 1977), *aff'd sub nom*, *Wolfish v. Levi*, 573 F.2d 118 (2nd Cir. 1978), *rev'd on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. County of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Spencer*, 638 F. Supp. at 316. Plaintiff has no right to an effective grievance procedure. *Ishaaq v.*

7

*Compton*, 900 F. Supp. 935, 940-41 (W.D. Tenn. 1995); *Flowers v. Tate*, Nos. 90-3742, 90-3796, 1991 WL 22009 (6th Cir. Feb. 22, 1991). Therefore, Defendant Knox's alleged failure to address Plaintiff's grievance does not support a § 1983 claim. *Id.*; *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

As already discussed, the alleged coolness of his cell does not rise to the level of a constitutional violation. The claims against Defendant Knox will be dismissed.

### III. CONCLUSION and ORDER

For the foregoing reasons, the Court **DISMISSES** the claims against Defendants Adams, Knox, Fackler, and Bullock. However, because Plaintiff alleges a claim of sufficiently serious nature regarding his lack of medication, the Court will allow Plaintiff to move to amend his complaint to name Defendants Adams and Bullock in their individual capacities. *See Berndt v. State of Tenn.*, 796 F.2d 879, 882-83 (6th Cir. 1986). **Plaintiff has 30 days to file an amended complaint against Defendant Adams and Bullock in their individual capacities**. Should Plaintiff fail to do so, the Court **will dismiss the instant action**.

Date:

cc: Plaintiff, *pro se*
 Defendants
 Bullitt County Attorney
4412.009

8